# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4226 | **DATE** | 6/25/2001 |
| **CASE TITLE** | SAIDA ALSARAS vs. DOMINICK'S FINER FOODS, INC. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The motion to strike [52-1] is granted in part and denied in part. Latricia Graham's affidavit is stricken. The motion is denied in all other respects. The motion for summary judgment [44-1] is granted. Judgement is entered for defendant Dominick's Finer Foods, Inc. and against plaintiff Saida Alsaras. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUN 2 8 2001 | |
| | Notified counsel by telephone. | | date docketed | 56 |
| | Docketing to mail notices. | | CM | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/26/2001 | |
| | | | date mailed notice | |
| sb | courtroom deputy's initials | E0-7 FILED FOR DOCKETING 01 JUN 27 PM 7:49 | pg | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED

JUN 2 8 2001

| | | |
|---|---|---|
| SAIDA ALSARAS | ) | |
| | ) | |
| Plaintiff, | ) | No. 99 C 4226 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| DOMINICK'S FINER FOODS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Saida Alsaras ("Alsaras") sues Dominick's Finer Foods, Inc. ("Dominick's") for religious

discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Dominick's moves for summary judgment, pursuant to Fed.R.Civ.P. 56. Dominick's further moves

to strike portions of Alsaras' response to Dominick's 56.1 Statement of Facts and the affidavit of

Latricia Graham ("Graham"), a Dominick's employee.

## BACKGROUND

### I.     The parties

All facts are undisputed unless otherwise noted.[1] Dominick's is a retail grocery chain that

operates approximately 119 stores in the Chicago area. Alsaras began working for a Dominick's

---

[1]In several of Alsaras' responses to Dominick's 56.1 facts, she neither admits nor denies
the facts but rather objects to their admissibility. All facts that are not denied with cites to
supporting evidence in the record are deemed admitted. Local Rule 56.1(b); *McGuire v. United
Parcel Service*, 152 F.3d 673, 675 (7th Cir. 1998). Additionally, Alsaras contends the affidavits
of Jeff Norkiewicz and Brenda Pedersen should be stricken for lack of personal knowledge.
Alsaras' requests are without merit.



store located in Bridgeview, Illinois ("store 315") on October 23, 1991. She subsequently transferred upon request to two other Dominick's stores but eventually returned to store 315. Throughout her employment with Dominick's, Alsaras worked as a general merchandise clerk in the general merchandise department.

## II.    Alsaras' religion

Alsaras has been Muslim for her entire life, but she did not begin practicing Islam until August 1995. The Islamic religion requires her to wear a hijab, which is a dress covering the entire body except head and hands. As a follower of Islam, she is forbidden from handling or consuming alcohol. In addition, she must pray at five fixed times each day. The prayers are required at approximately 5:00 a.m. (five-minute prayer), 12:50 p.m. (ten-minute prayer), 5:30 p.m. (five-minute prayer), 7:25 p.m. (seven-minute prayer), and 8:30 p.m. (ten-minute prayer).

In August 1995, Alsaras notified her supervisor, Judy Styka ("Styka"), that she would need job accommodations consistent with these religious customs and practices. Styka agreed to the accommodations. Later that day, Styka asked Alsaras to meet with her, Al Jensen ("Jensen"), and Brenda Pedersen ("Pedersen"). Jensen was the store manager and Pedersen was the human resources manager. During the meeting, Alsaras explained her accommodation needs and was told that there were no problems with her requests.

The following day, Styka told Alsaras that Jensen wanted a written note for the personnel file detailing her accommodations request. Alsaras provided a letter from her religious leader within the week. In September 1996, Styka told Alsaras that Dominick's lost the letter and requested a new one. Alsaras complied with the request.

## III. Alsaras' work tardiness

Dominick's eight-hour shift employees are allowed two daily unpaid 15-minute breaks and one unpaid 30-minute lunch break. Dominick's requires its hourly employees to punch in and out on a timeclock for their breaks and lunch period. On July 30, 1995, Robert Popovits ("Popovits"), the general merchandise manager at the time, gave Alsaras a verbal warning for allegedly being tardy nine times. On August 19, 1995, Alsaras received a written warning for alleged tardiness four times during August.

In April 1998, Mike Chimera ("Chimera") became store 315's manager. Shortly upon arrival, Chimera posted signs in the employee break room and at all the timeclocks, reminding employees that they must punch in and out for breaks and lunches. On May 3, 1998, Chimera gave Alsaras a verbal warning alleging that she was tardy the previous day.

## IV. Alsaras' suspension and termination

On June 23, 1998, Alsaras was scheduled to work from 1:30 p.m. until 10:00 p.m. At approximately 6:45 p.m., Alsaras took a ten-minute break to say a prayer. She punched back in at 6:55 p.m. A few minutes later, Alsaras went outside the store. She did not punch out before going on what she claims was her lunch break. Alsaras contends she was outside for 20-30 minutes, whereas Dominick's contends she was outside for approximately one hour.

The timeclock is located near the front entrance of the store. When Alsaras reentered the store after her break, John Manning ("Manning"), the front entrance security officer, asked her to come inside the security office. Mary Ellen Buda, a customer service employee, and Ken Kostecki ("Kostecki"), the store's co-manager, were already in the office. Manning asked Alsaras to write down everything she did that day. Before Alsaras finished writing, she stopped and

asked for a union representative to be present. She subsequently returned to her work area.

Shortly afterwards, Kostecki requested that she return to the security office. Upon arrival, she

was asked to finish writing her statement and sign it. She refused and was then told to go home.

Manning and Kostecki obtained a written statement from Ralph Martinez ("Martinez"), a

non-Moslem who worked at Dominick's. In the statement, Martinez admitted that he was

outside for 50 minutes with Alsaras but did not punch out for the break.[2] When Alsaras returned

to work on June 24, 1998, she was told that she suspended until further notice for intentionally

failing to punch out. Martinez was also suspended that day.

Jeff Norkiewicz ("Norkiewicz"), store 315's director of operations, conducted an

investigation into the events surrounding the suspensions of Alsaras and Martinez. He concluded

that Alsaras and Martinez deliberately stole company time and decided to terminate them. On

July 3, 1998, Chimera called Alsaras and told her she was fired.

## DISCUSSION

I.    **Motion to strike**

### A. Response to 56.1 statement

A party opposing summary judgment must serve a concise response to each numbered

paragraph in the movant's statement of facts and, in the case of disagreement, cite supporting

parts of the record. The opposing party must file a separate statement of additional facts

supporting a denial of summary judgment. Local Rule 56.1(b)(3)(A) and (B). Dominick's

contends Alsaras' responses to paragraphs 24, 26, 27, 42, 43, 44, 54, 72, 74, and 75 of the 56.1

---

[2]Alsaras contends Martinez' note and statements are hearsay and inadmissible for
purposes of summary judgment. The statements are not considered for the truth of their
assertions, but rather in evaluating Dominick's response to those assertions.

facts improperly contain additional facts that should be stricken for failure to comply with the local rules.

In paragraph 24, Alsaras' concise response uses minimal additional facts to explain why she denies the asserted facts. Her response is acceptable under the local rules. *See e.g., Renaldi v. Sears Roebuck and Co.*, No. 97 C 6057, 2001 WL 290374, at *3 (N.D. Ill. March 21, 2001) (statements may be asserted to contradict a 56.1 paragraph). The responses to paragraphs 26, 27, and 42-44 technically state minor additional facts. However, there is no need for the court to rely on these facts because Alsaras properly asserts them in her statement of additional facts. The response to paragraphs 54, 74, and 75 state facts not found within Alsaras' statement of additional facts, but the facts are irrelevant for purposes of defendant's summary judgment motion. Accordingly, there is no need to strike portions of Alsaras' response.

## B. Latricia Graham's affidavit

Affidavits must "set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Local Rule 56(e). Graham's five-paragraph affidavit fails to comply with these requirements. The statements in paragraphs two and three are vague in that they fail to list relevant dates and times or explain Graham's role in the alleged events. Pl. Resp., Ex. 20. There is no basis from which the court could find that Graham had personal knowledge of the information to which she attests.

Paragraphs 4 and 5 suffer from similar deficiencies. Paragraph four states, "That I reported John Manning, a non-Moslem, for shopping while he was on company time and thus was guilty of the same offense of stealing time which Saida Alsaras, a Moslem was dismissed for." *Id.* "Guilty of the same offense" is an improper conclusory allegation. In addition, there is

no indication as to how Graham knew that Alsaras was dismissed or the reasons for her

dismissal. Paragraph five states, "That I sent a tape of this information to the regional supervisor

and no action was taken." *Id.* This paragraph fails to demonstrate how Graham knew that no

action was taken. Accordingly, Graham's affidavit and all references to the affidavit must be

stricken. *See e.g., Vallabhapurapu v. First National Bank of Chicago*, 998 F.Supp. 906, 909, n.2

(N.D. Ill. 1998) (affidavit should be stricken when it failes to demonstrate affiant's personal

knowledge). *See also Abioye v. Sundstrand Corporation*, 164 F.3d 364, 368 (7th Cir. 1998)

(speculation, conjecture, and conclusory allegations are insufficient to defeat summary

judgment).

## II. Summary judgment motion

### A. Summary judgment standard

Summary judgment is appropriate when the moving papers and affidavits show there is

no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human

Resource Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its

burden, the non-moving party must go beyond the pleadings and set forth specific facts showing

there is a genuine issue for trial. Fed. R. Civ. P. 56 (e); *Silk v. City of Chicago*, 194 F.3d 788,

798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable

inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens

Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216

F.3d 596, 599 (7th Cir. 2000). The summary judgment standard is applied with special scrutiny to employment discrimination cases because the outcome often depends on determinations of credibility and intent. *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 692 (7th Cir. 2000).

## B. Title VII claim

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *Contreras v. Suncast Corporation*, 237 F.3d 756, 759 (7th Cir. 2001). Such discrimination can be established with either direct or indirect evidence. *Id.*

Alsaras relies upon indirect evidence to establish religious discrimination. When a plaintiff attempts to establish discrimination with indirect evidence, courts have established a framework for allocating the burden of production between the parties and an order for the parties' presentation of proof. *Michas*, 209 F.3d at 692. The plaintiff must first make out a *prima facie* case of discrimination. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Once a *prima facie* case has been established, the defendant must offer a legitimate non-discriminatory reason for the employment decision. *Id.* If the defendant can offer a non-discriminatory reason, the burden then shifts to the plaintiff to prove the defendant's reason is merely a pretext for discrimination. *Id.* at 693.

### 1. *Prima facie* case

To establish a *prima facie* case of discrimination, plaintiffs typically must present

evidence to show: (1) they are a member of a protected class; (2) they met their employer's job expectations to a reasonable extent; (3) they were the victims of an adverse employment action; and (4) the defendant treated similarly situated employees outside the protected class more favorably. *Russell v. Board of Trustees of the University of Illinois at Chicago*, 243 F.3d 336, 341 (7th Cir. 2001).[3] The parties dispute whether Alsaras can establish prongs two and four.

By Alsaras' own admissions, she cannot establish that she was meeting her employer's job expectations at the time she was terminated. It is undisputed that Dominick's requires its employees to clock out before going on breaks and that she was aware of this policy but failed to comply on June 23, 1998. Non-compliance with this policy is the sole reason Dominick's offers for firing her. Thus, Alsaras' evidence that her job performance was satisfactory until this incident is irrelevant. The court must focus on Alsaras' performance at the time of her termination. *Karazanos v. Navistar International Transportation Corporation*, 948 F.2d 332, 336 (7th Cir. 1991). A more difficult question is whether failing to clock out once means Alsaras was not meeting Dominick's expectations *to a reasonable extent.* The court need not address this issue because it is clear Alsaras' evidence cannot establish that similarly-situated Dominick's employees were treated more favorably when they failed to clock out.

First, Alsaras points to the undisputed fact that her employer requested two letters outlining her religious beliefs. Pl. Facts, Ex. 2, at pp. 97-99, 105. She contends no other employees received similar requests. This evidence is irrelevant for purposes of establishing

---

[3]The Seventh Circuit has found that although the *McDonnell Douglas* framework is often the best approach to religious discrimination cases, alternative methods may be used. *See Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1169-70 (7th Cir. 1998). The court need not address alternative methods because the parties agree that *McDonnell Douglas* applies.

prong four. The evidence does not suggest that Dominick's retained or treated more favorably

non-Muslim employees who failed to clock out. *See Hiatt v. Rockwell International*

*Corporation,* 26 F.3d 761, 771 (7th Cir. 1994) (plaintiffs terminated for misconduct must show

they are similarly situated with employees accused of the same misconduct). Furthermore,

Alsaras fails to offer evidence showing that any non-Muslim employees requested special

accommodations based on their religion.[4]

Second, Alsaras offers her own testimony to show that Martinez was frequently late and

never disciplined for his tardiness. Pl. Facts at ¶ 4. Similarly, she offers her own testimony that

three other Muslim employees were treated worse than non-Muslim employees because they

were refused breaks and promotions. *Id.* at ¶¶ 14-15. Again, this evidence is irrelevant for

determining disparate treatment of employees who fail to clock out. In addition, a plaintiff's own

uncorroborated testimony is insufficient to defeat a summary judgment motion. *Weeks v.*

*Samsung Heavy Industries Company,* 126 F.3d 926, 939 (7th Cir. 1997).

Third, Alsaras contends she was written up more frequently for tardiness after she started

wearing her hijab. In addition to being uncorroborated and irrelevant for purposes of her *prima*

*facie* case, this assertion is not supported by Alsaras' cite to pages 183-84 of her deposition.

Moreover, this assertion is actually contradicted by the record. It is undisputed that Alsaras was

written up for nine tardies before she wore the hijab and only five after she started wearing the

garment.

Finally, Alsaras offers the testimony of Richard Suchocki ("Suchocki"), Dominick's cold

---

[4]Alsaras asserts permission to wear a hijab was not a special accommodation because the garment did not violate Dominick's dress code. However, the dress code policy specifically called for black pants and the hijab was a black dress. Alsaras Resp. at p. 7.

store manager, that non-Muslim employees were not terminated after failing to punch in or out from a break. Pl. Resp. Ex. 19, p. 56. However, she fails to offer evidence to establish that these employees were similarly-situated in all respects. *See Spath v. Hayes Wheels, International-Indiana, Inc.,* 211 F.3d 392, 397 (7th Cir. 2000) (plaintiff must establish the "comparables" are similarly situated in all respects). She offers no evidence that the non-Moslems were hourly paid employees, that they took breaks of a length similar to her own, or that management had the same reasons to conclude they *deliberately* failed to punch out. Additionally, she fails to address Suchocki's testimony that other Moslems were not fired for failing to punch out. Pl. Resp., Ex. 19 at pp. 52-54.

Based on a comparison of the treatment Alsaras and Martinez received, Dominick's offers further evidence that similarly-situated Moslems and non-Moslems were treated equally. After conducting similar investigations for both Alsaras and Martinez, management concluded their failure to clock out on June 23, 1998 was deliberate. Def. Facts at ¶¶ 66-67. They were both suspended and ultimately terminated for this alleged infraction. *Id.* at ¶¶ 60-61, 70. Based on the evidence presented, no reasonable jury could conclude that similarly situated non-Moslems were treated more favorably. Furthermore, even if Alsaras could establish a *prima facie* case, she still could not withstand summary judgment.

## 2. Burden of production

Dominick's satisfies its burden of production because the company offers a legitimate non-discriminatory reason for terminating Alsaras. Specifically, Dominick's asserts Alsaras was terminated for deliberately stealing company time.

### 3. Pretext

After a defendant offers legitimate non-discriminatory reasons for termination, the plaintiff must be given the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 120 S.Ct at 2106 (citations omitted). The pretext inquiry focuses on the honesty rather than the accuracy of the employer's stated reasons for discharge. *Helland v. South Bend Community Sch. Corp.*, 93 F.3d 327, 330 (7th Cir. 1996). A plaintiff can prove the employer's proffered reasons were dishonest by showing the reasons: (1) have no factual base, (2) are not the actual motivation for discharge, or (3) are insufficient to motivate discharge. *Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1130 (7th Cir. 1997) (internal citations omitted). "The mere fact that the employer acted incorrectly or undesirably, however, cannot adequately demonstrate pretext." *Id.* For summary judgment purposes, Alsaras must "produce evidence from which a rational factfinder could infer that the company lied." *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir. 1994).

Alsaras offers evidence to show that her failure to clock out was unintentional. Pl. Resp., Ex. 6 at p. 117. This evidence is irrelevant for purposes of establishing pretext. *Waggoner v. City of Garland, Texas*, 987 F.2d 1160, 1166 (5th Cir.1993). The pertinent question is whether the decision-makers at Dominick's believed Alsaras intentionally stole the store's time. *Id.* at 1165-66. "The fact that the employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual." *Essex v. U.S. Parcel Service, Inc.*, 111 F.3d 1304, 1310 (7th Cir. 1997).

Alsaras' evidence that other employees were not fired for failing to clock out does not in

itself suggest pretext. Employers are allowed to make individualized decisions about the actions taken in response to a rule violation. They just cannot enforce their rules in a discriminatory way. *See Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1571 (7th Cir. 1989) (an employer can act arbitrarily but cannot treat an employee in the protected class more harshly than one who is not in the protected class). As discussed above, Alsaras fails to offer evidence that Dominick's treated similarly-situated non-Moslems more favorably.

Alsaras offers her own uncorroborated testimony that Dominick's failed to conduct a thorough investigation before terminating her, whereas Martinez was given the opportunity to explain his whereabouts. Again, Alsaras' cite to p. 128 of her deposition does not support this proposition. Furthermore, there is undisputed evidence that Alsaras was asked to write down everything she did on June 23, 1998, but she refused to finish the statement. Finally, Dominick offers evidence that Norkiewicz conducted the same thorough investigation for both Alsaras and Martinez. Def. Facts at ¶¶ 62-67.

Alsaras further contends that the individuals upon whom Norkiewicz relied when making his termination decision were the same individuals who were biased against her religion, namely Manning and Suchocki. However, Alsaras offers no admissible evidence to support this contention.

## CONCLUSION

Dominick's motion to strike is granted in part and denied in part. Graham's affidavit is stricken. The motion is denied in all other respects. Dominick's motion for summary judgment is granted.

ENTER:

Suzanne B. Conlon
United States District Judge

June 25, 2001